[Mayor and Aldermen of Birmingham v. Land.]

# Mayor and Aldermen of Birmingham v. Land.

*Action against City for Pollution of Stream.*

1. *Pollution of stream; when public nuisance.*—The pollution of a creek by emptying therein of the sewerage of a city, so as to contaminate and poison its waters for more than a mile, extending to and through the lands abutting on said stream and owned by an individual, there being a public road crossing the stream so polluted and the odors emitted therefrom at the point designated being most offensive, constitutes a public nuisance for which the said city will be liable.

2. *Pollution of stream; public nuisance can not be acquired by prescription.*—A public nuisance can not be acquired by prescription, and in an action against a city for maintaining a public nuisance by reason of its sewerage emptying into the stream and polluting it, special pleas setting up that the nuisance complained of had been maintained for more than ten years before the institution of the suit presents no defense to the action and are subject to demurrer.

3. *Pollution of stream; maintenance of public nuisance; right of condemnation no defense.*—In an action against a city for the maintenance of a public nuisance by reason of emptying its sewerage into a stream thereby polluting it, the fact that said city had the statutory power to construct the sewers emptying into said stream, upon the condemnation of land taken or injured in its construction, presents no defense when the lands alleged in the complaint to have been injured have not been condemned.

4. *Public nuisance; action to recover damages can be maintained by purchaser of land.*—Where a public nuisance is maintained without a right against any one, a purchaser of land affected by such nuisance has the same right of action in respect to it as his vendor had, and can recover all damages that may have resulted to him from its maintenance within a year before the institution of his suit.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. A. A. COLEMAN.

This action was brought by William M. Land against the mayor and aldermen of Birmingham.

Demurrers to the original complaint were sustained by the court. Thereupon the plaintiff amended his complaint by adding a third count thereto. In the amended complaint the plaintiff claimed of the defendant one thousand dollars damages. It was then averred in said complaint that the plaintiff owned a certain tract of land specifically described, and the complaint then averred as follows: "Plaintiff, with his family resides upon said land as his home, and keeps a milk dairy and farm upon said land as a means of livelihood, and for that the city of Birmingham is a large and populous city lying in a northeasterly direction from said land, and defendant has caused the sewerage system of said city to empty into said Valley Creek, a short distance up stream, to-wit, one mile above said land, and for that said Valley Creek was before said sewerage system was caused to be emptied into it, a constantly flowing stream of reasonably pure water, fit for the use of stock and for various domestic purposes, and for that residence along the banks of said stream was reasonably healthful, but since said sewerage system was caused to be emptied into said Valley Creek as aforesaid, from the 1st of December, 1898, to the present time as a proximate consequence of the emptying of said sewerage system into said creek as aforesaid, the waters of said creek have been tainted and befouled with the offal and refuse of said city, and has been rendered wholly unfit for domestic purposes and for the use of stock, and rendered poisonous to stock, and rendered offensive to the smell, and said offal and refuse is often caused to be deposited along the banks of said creek, and residence upon said land above described has been caused to be unhealthful and dangerous and said land has been rendered greatly less valuable than it otherwise would be, and plaintiff has suffered sickness personally, and in the person of the various members of his family, and has been put to great trouble, inconvenience, and expense in or about procuring medicine, medical attention, care, and nurs-

ing, and in or about treating said sickness, and plaintiff has been put to great trouble, expense and inconvenience in or about procuring water for domestic use, and for his stock, and in or about getting said stock to water, and in or about working at or near said creek at or upon said land, and plaintiff has lost a large part of his stock by same being poisoned or otherwise caused to die, and others of said stock were made sick, and damaged, as a proximate consequence of the continued emptying of said sewerage system into said Valley Creek as aforesaid."

It was then averred in the complaint that before the filing of the suit the plaintiff made application to the board of mayor and aldermen of Birmingham for the payment of the amount sued for and said application was refused by said board. The complaint as amended was demurred to upon the following grounds.: 1. For that it is not alleged that the acts complained of were done or caused to be done by the municipal authorities acting within the scope of their authority. 2. It is not shown what members of plaintiff's family were made sick. 3. It is not alleged what cattle or how many were poisoned or caused to die. Nor how many were made sick. This demurrer was overruled.

The defendant pleaded the general issue and by separate special plea set up the statute of limitations of 1, 6 and 10 years. The defendant also filed the following special pleas: 6. "That its sewer system was constructed and so built as to empty into Valley Creek, in the year 1888, and more than ten years before the commencement of this suit; and has been so maintained and operated, ever since said time, continuously, openly, notoriously, adversely and of right."

7. "That its sewerage system is of a permanent nature, constructed underground, and that it caused the same to be constructed and so built as to empty into Valley Creek, as alleged in said complaint, in the exercise of its governmental powers, conferred by its charter, and for the public purpose of draining the city; and in the exercise of such powers, it has caused the same

to be so maintained, continuously, openly, notoriously, uninterruptedly and as of right for more than ten years before the institution of this suit, to-wit, from the 1st day of September, 1888, to the present time."

8. "That its said sewerage system is a permanent structure, constructed underground and so as to flow into Valley Creek; and when such system was so constructed the plaintiff was not the owner nor occupant of the land described in the complaint, as amended, nor did he have any title to nor interest in the same; that said sewers were so built as to empty into Valley Creek in the year 1888, and have been so maintained since said time; that if plaintiff is now the owner or occupant of said land, he became such owner or occupant a long time, to-wit, ten years, after such sewers had been so constructed and while the same were being so maintained as to empty into Valley Creek, and with knowledge of the fact that such sewers had been so constructed and were being so maintained as to empty into Valley Creek, as aforesaid."

· 9. "That said sewer system was constructed and is maintained in accordance with the most approved scientific methods, under and in the exercise of its governmental powers, and that a sewerage system was and is essential to the public health and comfort of the citizens of Birmingham."

The plaintiff demurred to the sixth plea upon the following grounds: 1. No length of time will legalize a nuisance. 2. Defendant does not acquire the right to commit the injuries complained of by having committed them for ten years. 3. The plea does not show a prescriptive right to commit the wrongs complained of.

The plaintiff demurred to the seventh plea upon the grounds interposed to the sixth plea, and upon the following additional grounds: 1. The plea does not aver or show a condemnation of plaintiff's land, nor that compensation was paid therefor. 2. It is not averred or shown that defendant had any charter power to cause a nuisance. 3. A legislative act authorizing defendant to commit a nuisance and thereby cause injury, loss and damage to plaintiff would be unconstitutional.

The plaintiff demurred to the eighth plea upon the same grounds as interposed to the sixth and seventh pleas, and upon the following additional grounds: 1. Defendant has no legal right to cause injury and damage to plaintiff by continuing a nuisance because defendant committed a similar nuisance before plaintiff owned or occupied the land. 2. It is not averred or shown that the amount of sewerage was not increased since plaintiff's alleged occupancy or ownership of said land.

Plaintiff demurred to defendant's 9th plea and assigned as grounds of demurrer thereto the same grounds above assigned to the sixth, seventh and eighth pleas, and in addition thereto the following ground: Defendant's alleged necessities can not be a defense to an action for damages for wrongs committed by it.

The plaintiff's demurrers to the defendant's several pleas as set out above were sustained, and the cause was tried upon issue joined on the remaining pleas.

It was shown by the evidence that on or about December 1, 1898, he bought the lands described in the complaint from G. A. Harsh, paying $210 therefor, and immediately went into possession of said lands; that the plaintiff constructed a house on the same soon after he bought it.

The evidence showed that the defendant had, in the year 1888, constructed an underground sanitary sewerage system, and that through this system passed the discharge from the water closets, kitchen sinks and bath rooms in the city of Birmingham. The sanitary sewers were connected with the closets, kitchen sinks and bath rooms by means of pipes from four to eight inches in diameter.

The evidence showed that Valley Creek is, and always has been a flowing stream, carrying a small body of water; that it has its source near the center of the city of Birmingham, and flows through said city in a devious course for the distance of about one mile and a half. That Valley Creek is, and always has been the natural and only outlet for the surface drainage of the greater part of the area now covered by the city of Birmingham; that Birmingham is a large city of, to-wit, sixty thou-

sand inhabitants; that said Valley Creek is, and has always been, the natural and only outlet for the surface water and drainage for a large area west of the city limits of Birmingham, embracing Elyton and West End; that outside of the city limits there are no sanitary sewers and surface closets are used; that within the area drained, as aforesaid, by Valley Creek, are cemeteries, city streets, livery stables, breweries, furnaces, acid factories, surface closets and humane habitations. The evidence further showed that the said sanitary sewerage system empties into Valley Creek at a point about two and one half miles from the corporate limits of the city, and about one mile above where the said Valley Creek flows through the land described in the complaint.

The evidence further showed that the water of Valley Creek above and below the land described in the complaint, was polluted so as to be totally unfit for domestic use, or the use of cattle, and gave forth foul odors, and had been so for several years, to-wit, five years before this suit was brought. The plaintiff lived during the year 1898, on land situated on said Valley Creek, adjoining the land described in the complaint, and nearer the city, and had lived on said creek for at least five years next before he acquired any interest in, or made his residence on the lands described in the complaint, and during that time he was familiar with the stream and the condition thereof, and knew that said sewer emptied therein.

The evidence further showed that the water of Valley Creek was unfit for drinking purposes, above the point where the sanitary sewer emptied therein, by reason of the surface drainage, as aforesaid, emptying therein, and the character of the area drained by the stream.

There were several witnesses introduced by the plaintiff who testified to the water in Valley Creek being very much polluted by the sewerage of the city of Birmingham; that the said creek above where the sewerage of Birmingham emptied into it could be used for domestic purposes other than drinking, but that from the place where the sewerage emptied into the said creek to and beyond the property owned by the plaintiff, the water was so polluted and foul that it could be used for no

purpose and that by reason of the sewerage there were stenches and offensive odors given forth from said creek.

The plaintiff also introduced evidence to show that he had lost stock by reason of their drinking the water in Valley Creek where it flowed over his land, and further introduced evidence tending to show that he and his family had been made sick by reason of the sewerage of the city of Birmingham being emptied into said creek.

Upon the introduction of all the evidence, the court, at the request of the plaintiff, gave to the jury the following written charge: "If the jury believe the evidence they must find for the plaintiff." The court *ex mero motu* then instructed the jury as to the measure of damages.

There were verdict and judgment for the plaintiff assessing his damages at $500. The defendant moved the court to set aside the verdict and judgment and grant it a new trial upon the ground that said verdict and judgment were contrary to the law and the evidence and that said award of damages was excessive. The court overruled this motion and to this ruling the defendant duly excepted.

The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

R. J. LOWE and E. D. SMITH, for appellant.—Appellant insists that the sewerage system as constructed was permanent in its nature and, if by reason of its construction, the land described in the complaint was "taken or injured, or destroyed," the right of action thereupon accrued to the then owner of the land. The right of action did not pass with the title.—*Ewing v. Huntsville*, 116 Ala. 576.

The maintenance of the sewerage as shown by this case, could not have been a public nuisance. What the law authorizes to be done cannot be an offense against the public. The courts cannot forbid that which the law permits. The remedy for such an evil is with the law-

making power.—*Ewing v. Huntsville, supra;* Wood on Nuisances, (3d ed.), §§ 753, 757.

Any right, or interest, or easement, which may be acquired by condemnation, or purchase, may be acquired by adverse possession and user. The evidence shows that the defendant has maintained its sewer system which discharges into Valley Creek for more than ten years before this suit was brought, continuously, openly, notoriously and as of right. By this means the easement in Valley Creek has been acquired by adverse user, as fully as might be done by purchase or condemnation. *Polly v. McCall,* 37 Ala. 20; *Krautz v. Baltimore,* 64 Md. 491; *Nininger v. Norwood,* 72 Ala. 277; *Crabtree v. Baker,* 75 Ala. 91; *Huntsville v. Ewing,* 116 Ala. 576.

BOWMAN & HARSH, *contra.*—The city could not acquire by adverse user of ten years the right to continue the pollution of a stream by emptying its sewerage therein. By so doing it maintained a public nuisance. Wood on Nuisances, (2d ed.), §§ 865, 727; *Noonan v. City of Albany,* 79 N. Y. 476; Dillon Municipal Corporations, § 1047; *Nolan v. City of New Britain,* 38 Atl. Rep. 706; *Chapman v. City of Rochester,* 110 N. Y. 276; *Haskell v. New Bedford,* 108 Mass. 208; *Richardson v. Boston,* 60 U. S. 270; *Woodward v. Worcester,* 121 Mass. 245; *Brayton v. Fall River,* 113 Mass. 218; *Ashley v. Port Huron,* 35 Mich. 296; *Dwight v. Hays,* 150 Ill. 273; *Whaley v. Wilson,* 112 Ala. 630; *Hundley v. Harrison et al.* 123 Ala. 292.

McCLELLAN, C. J.—The pollution of Valley Creek by emptying therein of the sewage of the city of Birmingham so as to contaminate and poison its waters certainly for more than a mile extending to and through plaintiff's lands, and probably for a much greater distance, there being a public road in its immediate vicinity and, indeed, crossing it within that part of its course affirmatively alleged to be polluted, in the manner, to the extent and with the effect upon the water itself and upon the atmosphere thereabouts averred in the

35c

complaint, is a public nuisance.—*Nolan v. City of New Britain*, 38 Atl. Rep. 703, 706, and authorities there cited.

The proposition of law that a right to maintain a public nuisance cannot be acquired by prescription is thoroughly established, and is not questioned by the appellant in this case.—*Reed v. Birmingham*, 92 Ala. 348; *Wright v. Moore*, 38 Ala. 593; *Olive v. State*, 86 Ala. 88. The special pleas of defendant which set up that the nuisance complained of had been maintained by it for more than ten years before the institution of this suit, presented, therefore, no defense to the action, and demurrers to them were properly sustained.

The fact that the city of Birmingham had statutory authorization to construct a sewer emptying into Valley Creek upon the condemnation of lands taken or injured in its construction and use, is not of importance since the lands here injured have not been condemned. The nuisance is none the less a nuisance because of the statutory power referred to, the right to exercise the power in respect of this land not having been acquired.—*City of Mansfield v. Balliett*, 65 Ohio St. 451; s. c. 58 L. R. A. 628 and note.

The maintenance of this nuisance being without right against anybody, the plaintiff took, upon his purchase of lands affected by it, the same right of action in respect to it as his vendor had. Among these was the right to recover all damages that may have resulted to him from its maintenance within a year before the institution of his suit. The claim presented by his complaint and the evidence was for damages resulting within less than one year before suit brought. The several pleas of statutes of limitations were, therefore, bad.

The case of *City of Huntsville v. Ewing*, 116 Ala. 576, is not pertinent here. In that case the city had the right to maintain a ditch on the land of A., a right which was not affected by A.'s sale and conveyance to Ewing, and the whole deliverance proceeds on that theory. Here the city of Birmingham had no right to maintain this nuisance on this land either in the ownership and pos-

session of the plaintiff's vendor, or of the plaintiff himself.

We are not prepared to say that on the motion for a new trial the circuit court should have found the damages awarded to be excessive.

Affirmed.